fUNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE JPMORGAN CHASE PAYCHECK PROTECTION PROGRAM LITIGATION<br><br>This Document Relates To: ALL CASES | MDL No. 2944 |

### SHA-POPPIN GOURMET POPCORN LLC RESPONSE IN OPPOSITION TO MOTIONS TO CENTRALIZE AND TRANSFER TO THE SOUTHERN OR CENTRAL DISTRICTS OF CALIFORNIA

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiff Sha-Poppin Gourmet Popcorn LLC ("Plaintiff") submits this response in support of the two motions requesting that the United States Judicial Panel on Multidistrict Litigation (the "Panel") enter an Order centralizing the JPMorgan Chase Paycheck Protection Program cases presently before the Panel (the "Chase PPP Actions"). However, Plaintiff opposes transfer of the Chase PPP Actions to either the Central or Southern Districts of California and, instead, submits that the Northern District of Illinois is a more appropriate transferee forum for coordinated or consolidated pretrial proceedings.

**I.     BACKGROUND**

On March 27, 2020, the Small Business Administration's ("SBA") Paycheck Protection Program ("PPP")—Congress's response to the on-going COVID-19 pandemic—was enacted into law. (Dkt. 1-10 ¶ 3.) The PPP authorized up to $349 billion in forgivable loans to small business—those with fewer than 500 employees—to cover payroll and other expenses during the various states' stay at home orders. (*Id.* ¶¶ 26-27.) To facilitate the process, the PPP included structural protections against favoritism to ensure that funds went to these businesses. (*Id.* ¶ 29.) Most notably, SBA-approved lenders—including large national banks—were required to collect

1

and process loan applications on a first-come, first-served basis. (*Id.*) Under this structure, the clout of any given applicant was to have no effect on whether it received a PPP loan.

Defendant JPMorgan Chase Bank, N.A. ("Chase") is an SBA-affiliated lender authorized to process PPP loan applications. (*Id.* ¶ 32.) As one of the nation's largest banking institutions, Chase knew that it would receive tens of thousands of applications for PPP loans, including from (i) small businesses like Plaintiff requesting relatively small amounts (*e.g.*, less than $50,000); (ii) its larger and more prestigious business partners, like the companies operating the nationwide chain of Ruth's Chris Steakhouses, RCSH Operations, LLC and RCSH Operations, Inc. (together, "Ruth's Chris"); and (iii) clients with significant political clout, like Phunware, Inc., a vendor for President Trump's reelection campaign that named a former JPMorgan Chase executive as its corporate board chair the day after Congress passed the PPP loan program. (*Id.* ¶¶ 35, 39-50.)

Faced with the choice of helping small businesses or furthering its own interests, Chase put its thumb on the scale and funneled PPP money to its favored and more lucrative clients. (*Id.* ¶¶ 50-51.) To this end, and even though it was required to process PPP loan applications on a first-come, first-served basis, Chase decided to process the loan applications of its favored customers first and only then move onto the smaller businesses that were relying on a PPP loan to pay employees and stay in business. (*Id.* ¶ 51.) As the New York Times reported:

> At Chase, the nation's largest bank, nearly all private and commercial banking clients who applied for a small-business loan got one, whereas only one out of every 15 retail banking customers who sought loans was successful. . . . The two-tiered system paid off for well-to-do customer: By the time the [PPP] ran out of money . . . many top clients of national and regional banks had already had their loans approved.

(*Id.* ¶ 37.) As a result of Chase's favoritism, large and well-connected clients—like Ruth's Chris and Phunware—had their loans approved. (*Id.*) But smaller businesses, like Plaintiff, were left

wanting. (*Id.*) Thus, even though Ruth's Chris operates more than $450 million in annual revenue, has 150 locations nationwide, and more than 5,700 employees, Chase helped it receive *two* PPP loans for a total of $20 million. (*Id.* ¶¶ 40-41) A similar story played out for Phunware: it submitted its PPP application through Chase relatively late in the process, but, presumably because of its status in relation to the bank and the President, was still approved for a nearly $3 million PPP loan through Chase. (*Id.* ¶ 47.)

Plaintiff, like so many other small businesses, attempted to apply for a PPP loan through Chase on the first day applications were open, but was unable to secure any funds. (*Id.* ¶¶ 59-63.) Once news broke about Chase's practice of *not* processing PPP loan applications on a first-come, first-served basis, Plaintiff filed suit on its own behalf and on behalf of a national class of similarly situated businesses. Unique among the other cases that have been filed, Plaintiff's lawsuit also alleges a defendant class of loan recipients that received PPP funds as a result of Chase's misadministration of the program. (*Id.* ¶¶ 76-83.)

## II.    ARGUMENT

Plaintiff agrees that the Chase PPP Actions meet the criteria set out by 28 U.S.C. § 1407(a) for coordinated or consolidated pretrial proceedings, but proposes that the centralized cases be transferred to Judge Kennelly of the Northern District of Illinois—a forum that is better suited to efficiently and conveniently address the nationwide issue presented here.

### A.    The Chase PPP Actions Should Be Centralized.

Under 28 U.S.C. § 1407(a), "when civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." *Id*. The Panel makes such transfers when in furtherance of the "convenience of the parties and witnesses" and when transfer will "promote

the just and efficient conduct of such actions." *Id*. Generally speaking, the transfer of actions to a single forum under Section 1407 is appropriate where two criteria are present: (i) questions of fact common to all the centralized actions and (ii) the possibility of overlapping or inconsistent pretrial determinations—specifically including conflicting class certification decisions—by different courts. *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 398 F. Supp. 2d 1365, 1367 (J.P.M.L. 2005) (Addressing actions' "common factual core" and noting that "[t]ransfer under Section 1407 will offer the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that the common party and witnesses are not subjected to discovery demands that duplicate activity that will or has occurred in other actions"); *In re LTV Corp. Secs. Litig.*, 470 F. Supp. 859, 862 (J.P.M.L. 1979) ("Transfer under Section 1407 is thus necessary to prevent duplicative discovery efforts and eliminate the possibility of inconsistent pretrial rulings.").

Both considerations favor centralization of the Chase PPP Actions in one district court before one district judge. First, all the cases derive from the same factual core: the manner in which Chase processed PPP loan applications. For each case, Chase's liability turns on factual allegations that the bank did not process PPP loan applications on a first-come, first-served basis, or otherwise did not follow the guidelines mandated by Congress. While there is some variance between the individual actions—*e.g.*, one alleges that other major banks colluded to deny funds to small businesses, (dkt. 1-8), while another alleges that Chase withheld commissions from agents that helped businesses apply for PPP loans, (dkt. 1-9)—each turns on facts concerning Chase's administration of the PPP.

Second, and given this common factual predicate, the Chase PPP Actions all raise overlapping legal and factual issues that, absent centralization, stand to result in conflicting pretrial rulings. Among other determinations, each of the Chase PPP Actions will answer several factual questions (e.g., concerning Chase's administration of the PPP) and key legal ones. The legal questions include, of course, whether Chase's conduct gives rise to liability to small businesses like Plaintiff, whether under any state's statutory scheme or pursuant to traditional common law remedies. And they also include important procedural questions, most notably whether the facts and legal theories presented here are suitable for class treatment under Rule 23 of the Federal Rules of Civil Procedure. Either consideration is sufficient to support centralization. *See*, *e.g.*, *In re Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) (coordinating and transferring actions where all actions shared factual questions, citing the need to prevent inconsistent rulings "especially with respect to class certification"); *In re LTV Corp. Secs. Litig.*, 470 F. Supp. at 862 (citing *In re First Nat'l Bank, Heavener, Oklahoma (First Mortg. Revenue Bonds) Secs. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L.1978)) ("An additional justification for transfer is the fact that several of the actions before the Panel . . . have been brought on behalf of similar or overlapping classes . . . . It is desirable to have a single judge oversee the class action issues in all these actions to avoid duplicative efforts and inconsistent rulings in this area."); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (noting that the Panel has "consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists").

In sum, transfer to and coordination before one district court will result in a standardized and efficient process for disposing of the factual and legal issues across all of the Chase PPP Actions.

**B.      The Northern District of Illinois is the Most Appropriate Transferee Forum.**

The Panel's selection of a transferee court is guided by the underlying statutory goal of Section 1407(a): "the convenience of parties and witnesses [to] promote the just and efficient conduct of such actions." In keeping with this objective, the Panel primarily considers (i) the geographical proximity of the proposed forum to the parties, witnesses, and other evidence and (ii) the availability of an experienced and capable judge, along with other factors, such as the scope of the constituent cases and whether any are more advanced in terms of discovery. Given the facts and circumstances common to the Chase PPP Actions, transfer to a more geographically central location, like the Northern District of Illinois, best fits the objectives of Section 1407(a).

**1.      The Northern District of Illinois presents a convenient forum for centralized pretrial proceedings.**

The Northern District of Illinois would, particularly in comparison to the proposed California forums, be far more conducive to the convenient and efficient administration of these overlapping class actions. As discussed here and in the other papers filed before the Panel, because Chase is a large national bank, its administration (and alleged misadministration) of the PPP has national significance. Chase's decisions and policies about which PPP loan applications to process affected businesses across the country, including California companies like Hyde-Edwards Salon & Spa or Cyber Defense Group (dkts. 1-5, 1-6), midwestern businesses like Sha-Poppin Gourmet Popcorn LLC or Shiny Strands, Inc. (dkts. 1-10, 1-11), or businesses from New York like Ryan M. Kull Licensed Clinical Social Work LLC (dkt. 1-12). The national impact of Chase's conduct is evidenced by the cases filed—and continuing to be filed—across the country:

this MDL presently includes cases from California, two from the Northern District of Illinois, along with cases filed in New York, New Jersey, Florida, and Texas. (*See* dkts. 1-5 – 1-13, 15, 57.)

In other MDLs with national significance, the Panel has recognized the Northern District of Illinois—which is centrally located in the United States in a robust urban center—as an appropriate transferee forum. *In re McDonald's French Fries Litig.*, 444 F. Supp. 2d 1342, 1343 (J.P.M.L. 2006), *adhered to,* 545 F. Supp. 2d 1356 (J.P.M.L. 2008) ("[G]iven the geographic dispersal of the constituent actions, the Northern District of Illinois offers a relatively geographically central and accessible forum for this litigation."). *See also In re: Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (Selecting the Northern District of Illinois as an appropriate transferee forum where "actions have been filed throughout the country regarding a product marketed nationwide."); *In re: Text Messaging Antitrust Litig.*, 588 F. Supp. 2d 1372, 1373 (J.P.M.L. 2008) (noting that the Northern District of Illinois "provides a relatively central forum for this nationwide litigation"); *In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1373–74 (J.P.M.L. 2003) ("Given the dispersed location of constituent actions, no district stands out as the focal point for this nationwide docket. On balance, we conclude that the Northern District of Illinois is an appropriate transferee forum for this litigation."); *In re "Factor VIII or IX Concentrate Blood Prods.", Prod. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) ("[S]electing the Northern District of Illinois as the transferee forum, [and noting] that . . . Chicago is a geographically central location for this nationwide litigation").

In addition to its central location, the Northern District of Illinois is closer—and, thus, more convenient—to the witnesses and other evidence that will be common to each of the Chase

PPP Actions. While the individual businesses affected by Chase's conduct are spread across the country, because the PPP applications were processed online (rather than in person at individual branch locations), the evidence and witnesses relative to those businesses' legal claims will primarily reside with Chase, who is headquartered in Ohio (for JPMorgan Chase Bank) or New York (for JPMorgan Chase & Co.). (Dkt. 1-5 ¶¶ 12-13.) The physical proximity of Chicago to the more substantial body of witnesses and evidence for this case makes Northern District of Illinois far preferable to either the Central or Southern Districts of California. *In re: Ford Motor Co. Defective Spark Plug & 3-Valve Engine Prods. Liab. Litig.*, 844 F. Supp. 2d 1375, 1376–77 (J.P.M.L. 2012) ("Moreover, [the Northern District of Ohio] is significantly closer to Ford's Michigan headquarters, where potentially relevant documents and witnesses may be found, than is the other proposed transferee forum, the Central District of California."); *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379–80 (J.P.M.L. 2017) (selecting Ohio has a transferee court because the midwestern state "[t]he Northern District of Ohio presents a geographically central and accessible forum that is relatively close to defendants' various headquarters in New York, Connecticut, New Jersey and Pennsylvania."). Similarly, while the constituent plaintiff businesses are spread throughout the country (as are their individual attorneys), the attorneys representing Chase are headquartered in Chicago—a fact that will further cut down on the amount of overall travel required as centralized pretrial proceedings unfold. (*See* dkts. 12, 13.)

Further, and as with other major metropolitan areas, Chicago's infrastructure—including its availability of travel, lodging, and legal support services—will benefit the scope of the cases presented here. *See In re WorldCom, Inc., Sec. & "Erisa" Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (Selecting New York City as transferee forum and noting that "a litigation of

this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services."). Likewise, the Northern District of Illinois is equipped with courtroom technology and procedures that not only helps with regular presentations at hearings, but can also facilitate remote hearings and conferences as the pandemic continues to limit the availability of in-person appearances. *See* N.D. Ill. Courtroom Technology, https://www.ilnd.uscourts.gov/Pages.aspx?page=CourtRoomTechnology (last visited May 28, 2020).

In short, transfer to a geographically central location like the Northern District of Illinois will require less travel for less people. Given the country's—and the world's—current state of affairs, that is an outcome to be embraced.

### 2. Judge Kennelly of the Northern District of Illinois is an experienced and available MDL jurist.

The Panel's other primary consideration when selecting a transferee forum is the availability of an experienced MDL judge. Here, the Honorable Matthew Kennelly of the Northern District of Illinois would make an ideal choice.[1]

Judge Kennelly has been repeatedly identified by the Panel as "an experienced MDL jurist." *In re: Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d at 1352. Given his reputation and ability to manage complex MDL dockets, the Panel has transferred multiple MDLs to Judge Kennelly's courtroom. *See, e.g.*, *In re: AndroGel Prods. Liab. Litig.*, 24 F. Supp.

---

[1] The Honorable Joan B. Gottschall, who was assigned the *Sha Poppin* matter in the Northern District of Illinois, (dkt. 1-10), would make an equally appropriate transferee judge. *See In re: Navistar Maxxforce Engines Mktg., Sales Practices & Prod. Liab. Litig.*, 67 F. Supp. 3d 1382, 1384 (U.S. Jud. Pan. Mult. Lit. 2014) ("The Honorable Joan B. Gottschall, to whom we assign these actions, is an experienced transferee judge who will steer this litigation on an efficient and prudent course.").

3d 1378, 1380 (J.P.M.L. 2014) (transferring MDL to Judge Kennelly and noting "[w]e are confident that he will steer this litigation on a prudent course."); *In re Navistar 6.0 L Diesel Engine Prods. Liab. Litig.*, 777 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011) (transferring MDL to Judge Kennelly and noting that he "can effectively manage this litigation"); *In re: Text Messaging Antitrust Litig.*, 588 F. Supp. 2d at 1373 (noting that Judge Kennelly has the "experience to steer [the MDL] docket on a prudent course.") In terms of availability and fit, Judge Kennelly only has one MDL pending before him, *Pending MDLs by District as of May 15, 2020*, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf, and was assigned one of the Chase PPP Actions, (dkt. 1-11). Further, the docket of the Northern District of Illinois shows no indications that it is overburdened and, as the Panel has previously recognized, has "the resources available to manage [a complex multidistrict] litigation." *In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007).

As such, there is every reason to believe that Judge Kennelly would make a suitable transferee judge and, as he has with several other complex MDLs, "steer this litigation on a prudent course." *In re: Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d at 1352.

### 3.   Other considerations support transfer to the Northern District of Illinois.

While the centrality and availability of an experienced MDL judge are the most relevant considerations for selecting a transferee forum, other factors support transfer to the Northern District of Illinois as well. For example, the Panel has found that transfer to a district that includes a case with broad allegations—ones that encompass the other constituent MDL cases—is appropriate. *See, e.g., In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 484 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) ("Although either of the suggested districts would be an appropriate transferee forum for this litigation, the Panel has selected the Central District of

California, because the California action appears to be slightly broader and somewhat more procedurally advanced than the Iowa action."); *In re S. Pac. Transp. Co. Emp't Practices Litig.*, 429 F. Supp. 529, 531 (J.P.M.L. 1977) (transferring to district with the "action containing the broadest allegations"). Here, movants' cases are limited in scope: both allege claims on behalf of a statewide (Californian) class. (*See* dkts 1-5 ¶ 53 and 1-6 ¶ 43.) Plaintiff's complaint, in contrast, asserts claims on behalf of a *national* class that encompasses claims and discovery relevant to movants' cases. (Dkt. 1-10 ¶ 70.) Moreover, Plaintiff additionally alleges claims against a *nationwide defendant* class, which presents a host of factual and legal issues that are not present in either of the California actions. (Dkt. 1-10 ¶ 76.) Accordingly, the breadth of Plaintiff's case also supports transfer to the Northern District of Illinois.

Finally, the fact that the Chase PPP Actions were all filed within days of each other and, thus, none is more procedurally advanced than any other, means that the "first-filed" consideration identified by movant Cyber Defense Group, LLC should not weigh heavily—or at all—in the Panel's decision. (*See* dkt. 5-1 at 10 (citing *In re Household Good Movers Antitrust Litig.*, 502 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007)).) To be sure, assigning more weight to the choice of the first-filed action is often appropriate because, as the longest pending litigation, the initial action will have made significant progress in the litigation (*e.g.*, in terms of discovery or pretrial rulings), at least in comparison to cases filed months, or even years, later. *See*, *e.g.*, *In re: Ford Motor Co. Defective Spark Plug & 3-Valve Engine Prod. Liab. Litig.*, 844 F. Supp. 2d at 1376 (transferring to home district of first-file case, and noting "[t]he first-filed action, which was filed in this district more than a year before the next most recent action, is proceeding apace."); *In re: Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 626 F. Supp. 2d 1358, 1359 (J.P.M.L. 2009) (transferring to home district of first-filed case, noting that

the litigation's "discovery and other pretrial proceedings already completed . . . can inure to the benefit of the newly-filed actions."). But here, all the Chase PPP Actions were filed within days of each other, and the only "progress" made by the Cyber Defense case is an agreement extending Chase's deadline to answer the complaint. *See Cyber Defense Group, LLC et al v. JPMorgan Chase et al*, No. 20-cv-03589, dkt. 15 (C.D. Cal. May 14, 2020). Further, because Chase's conduct affected businesses in *every* state, here, the Central District of California has "no special connection to either the parties or the litigation's subject matter." *See In re: Halftone Color Separations ('809) Patent Litig.*, 547 F. Supp. 2d 1383, 1385 (J.P.M.L. 2008). Under the circumstances, Plaintiff respectfully submits that any "first-filed" consideration should not outweigh the practical benefits that a more central location, like the Northern District of Illinois, would carry as a forum for centralized pretrial proceedings.

### III.    CONCLUSION

For all the reasons stated above, Plaintiff respectfully requests that the Panel enter an Order consolidating the cases before the Panel in MDL No. 2944 and transferring the Chase PPP Actions to the United States District Court for the Northern District of Illinois.

                                                Respectfully submitted,

                                                EDELSON PC

Dated: May 29, 2020                        By: /s/Benjamin H. Richman

                                                Benjamin H. Richman
                                                brichman@edelson.com
                                                EDELSON PC
                                                350 North LaSalle Street, 14th Floor
                                                Chicago, Illinois 60654
                                                Tel: 312.589.6377
                                                Fax: 312.589.6378

                                                *Attorney for Plaintiff*